UNITED STATES BANKRUPTCY COURT

DISTRICT OF ARIZONA

| | | |
|---|---|---|
| **In re:** | ) | Chapter 7 Proceedings |
| | ) | |
| **GARY CRAIG SOLOMON** | ) | Case No: 2:21-bk-02622-DPC |
| **BOBBIE SUE SOLOMON,** | ) | |
| | ) | Adversary No. 2:22-ap-00048-DPC |
| **Debtors.** | ) | |
| | ) | **UNDER ADVISEMENT ORDER RE** |
| **LAWRENCE J. WARFIELD,** | ) | **DEFENDANTS' MOTION TO** |
| **TRUSTEE,** | ) | **DISMISS ADVERSARY** |
| | ) | **COMPLAINT** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | (Not for Publication – electronic |
| | ) | Docketing ONLY)[1] |
| **SOLOMON GLOBAL, LLC, AARON** | ) | |
| **JACKSON SOLOMON, TRICIA** | ) | |
| **KILLEN AKA TRICIA SOLOMON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

Before this Court is the Motion ("Motion to Dismiss")[2] of Defendants Solomon Global, LLC ("Solomon Global"), Aaron Jackson Solomon ("Aaron"), and Tricia Solomon[3] (collectively "Defendants") to dismiss this Adversary Proceeding. Plaintiff, Trustee Lawrence Warfield ("Plaintiff"), filed a Response ("Response")[4] to the Motion to Dismiss, and Defendants filed their Reply ("Reply").[5] On June 6, 2022, the Court held a hearing on the Motion to Dismiss and took this matter under advisement.[6] After

---

[1] This decision sets forth the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. ("Rule") 7052. Rule 7052 is applicable to this adversary case No. 2:22-ap-00048-DPC ("Adversary Proceeding").
[2] DE 12. "DE" references a docket entry in this Adversary Proceeding.
[3] Tricia Solomon is Aaron's spouse. Plaintiff alleges that the alleged fraudulent transfers to Aaron benefited Aaron and Tricia Solomon's marital community.
[4] DE 15.
[5] DE 16.
[6] DE 18.

1

considering the parties' oral arguments and briefs, this Court now grants Defendants' Motion to Dismiss with leave to amend Plaintiff's Complaint for the reasons stated below.

I. **BACKGROUND**

On April 9, 2021, Gary Craig Solomon ("Gary Solomon") and Bobbie Sue Solomon (collectively "Debtors") filed their chapter 7 bankruptcy petition.[7] On March 16, 2022, Plaintiff commenced this Adversary Proceeding by filing the complaint ("Complaint").[8] Plaintiff's Complaint seeks to avoid the 2020 transfers of two parcels of real property to Aaron from Solomon Global, a nondebtor entity, under §§ 548(a)(1)(A), 548(a)(1)(B)(ii)(I) and (II), 544, and A.R.S. § 44-1004(A)(1) and (A)(2), and A.R.S. § 44-1005 ("Fraudulent Transfer Claims").[9] The Fraudulent Transfer Claims are predicated on Plaintiff's request that the Court determine that Solomon Global is nothing more than a "sham entity" and/or Debtors' alter ego and, therefore, the assets of Solomon Global are Debtors' assets and property of this chapter 7 bankruptcy estate ("Bankruptcy Estate").[10]

A. **Debtors' Interests in Solomon Global**

Debtors live at 2898 W. Papermill Road Taylor, AZ (the "Papermill House") and have lived there for not less than 45 years.[11] On June 1, 2011, Debtors transferred title to the Papermill House and five other parcels of real estate ("Properties") to Solomon Global for no consideration.[12] Solomon Global is a multi-member Arizona limited liability corporation formed in April 2011.[13] In April 2011, Debtors were members of

---

[7] Administrative DE 1. "Administrative DE" references a docket entry in the bankruptcy case 2:21-bk-02622-DPC.
[8] DE 1.
[9] DE 1, page 6.
[10] DE 1, page 6.
[11] DE 1, page 2.
[12] DE 1, page 2.
[13] DE 16, Exhibit B.

2

Solomon Global, as were Debtors' daughter, Karen Godfrey ("Karen"), and Debtors' son Aaron, and other members who appear to be related to Debtors.[14] Gary Solomon reportedly told Karen that Solomon Global was formed to "protect assets."[15]

### B. The State Court Litigation

On September 28, 2011, Jason Hatch and Hatch Development (collectively "Hatch") filed a lawsuit ("Hatch Litigation") in Navajo County Superior Court ("State Court") against the Debtors.[16] Around November 2013, the State Court denied Debtors' motion to reconsider an order granting summary judgment to Hatch.[17] On January 24, 2014, two months after the State Court's unfavorable ruling, Debtors gave up their membership interests in Solomon Global.[18] By the time the Hatch Litigation finally culminated in a money judgment ("Judgment") against Debtors for $318,813.55, Debtors had no interest in Solomon Global or the Papermill House or the Properties owned by Solomon Global.[19]

Hatch later transferred the Judgment to GHB Construction, LLC ("GHB").[20] On October 4, 2016, in an effort to collect its Judgment against Debtors, GHB filed a complaint in the State Court alleging that Debtors' transfer of the Papermill House and Properties to Solomon Global in 2011 was a fraudulent transfer.[21] The State Court dismissed GHB's complaint, finding GHB's fraudulent transfer avoidance claims were barred by the statute of limitations. The Arizona Court of Appeals affirmed.[22]

---

[14] DE 1, page 2.
[15] DE 1, page 2-3.
[16] DE 1, page 2.
[17] DE 1, page 2.
[18] DE 1, page 2. Debtors gave up or "transferred" their membership interest back to Solomon Global, thereby increasing the ownership stake of the other members of Solomon Global, which includes Debtors' family members.
[19] DE 1, page 2.
[20] DE 12, Exhibit 1.
[21] DE 12, Exhibit 1.
[22] DE 12, Exhibit 1.

3

## C. Debtors' Continued Control Over Solomon Global's Assets

Since Debtors transferred the Papermill House to Solomon Global, Debtors continue to live in the Papermill House for free and continue to make all decisions relative to it, including the decision that Solomon Global pay the real estate taxes from the sale proceeds of other Properties owned by Solomon Global.[23] In 2015 and 2019, Solomon Global sold two of the Properties for $30,000 each.[24] Prior to the 2019 sale, Debtors received the rental income from the tenants of that property.[25] With respect to both sales, Gary Solomon allegedly told Karen that he "really needed the money."[26]

Solomon Global does not have its own bank account and does not file its own tax returns.[27] Karen also never received a K-1 from Solomon Global.[28]

## D. The Alleged Fraudulent Transfers

In August 2020, Solomon Global transferred to Aaron: (1) the construction yard at 915 W. Papermill Road, where Gary Solomon operated a construction business and kept construction equipment; and (2) Parcel No. 404-04-016B, where Aaron now lives. Solomon Global did not receive any consideration for either transfer.[29] Plaintiff is apparently barred by the statute of limitations from challenging the 2011 transfer of the Papermill House and Properties to Solomon Global or the 2014 release of Debtors' membership interests back to Solomon Global.

---

[23] DE 1, page 4.
[24] DE 1, page 3.
[25] DE 1, page 4.
[26] DE 1, page 4.
[27] DE 1, page 4.
[28] DE 1, page 4.
[29] DE 1, page 4.

4

### E. Motion to Dismiss

    i. <u>Defendants' Motion to Dismiss</u>

Defendants' Motion to Dismiss makes several arguments as to why Plaintiff's Complaint should be dismissed.[30] First and foremost, Defendants argue that the Complaint fails to state a claim for which relief can be granted.[31] Defendants assert that the Trustee's avoidance powers under §§ 544 and 548 are limited to transfers of Debtors' interests in property.[32] Plaintiff's Complaint does not allege that any property of Debtors was transferred to Defendants.[33] As a result, Defendants argue that this Court lacks subject matter jurisdiction[34] because Trustee lacks standing to pursue the Fraudulent Transfer Claims set forth in the Complaint.[35]

Second, Defendants argue that the Court lacks personal jurisdiction. Defendants note that subject matter jurisdiction is a prerequisite to personal jurisdiction, and since the Court lacks the former, no personal jurisdiction exists over Defendants.

Third, Defendants argue that Trustee cannot cure his lack of standing through his alter ego or "sham" theories.[36] Defendants assert that, regardless of how the Trustee frames his theory of liability, the Trustee is requesting the Court to reverse pierce the

---

[30] Defendants argued in their Motion to Dismiss that Plaintiff's Complaint was based on allegations resolved by the State Court in prior litigation involving the transfer of the Properties to Solomon Global in 2011 and, therefore, Plaintiff's Complaint should be dismissed on collateral estoppel grounds. At oral argument, Defendants' counsel conceded that principles of collateral estoppel could not be the basis for dismissing Plaintiff's Complaint. The Complaint seeks to avoid transfers that were not in question at the time of the State Court litigation.
[31] DE 12, page 3-4.
[32] DE 12, page 3-4.
[33] DE 12, page 4.
[34] Defendants' Motion to Dismiss includes a statement that Defendants do not consent to this Court's jurisdiction or this Court's authority to enter final orders or judgments. Further, Defendants expressly reserved their right to request a jury trial. Defendants' Motion to Dismiss also stated that they do not waive any jurisdictional objections or arguments.
[35] DE 12, page 5.
[36] DE 12, page 5.

corporate veil and find that assets owned by Solomon Global are, in fact, assets of the Debtors.[37] Defendants contend that the Trustee cannot pierce the corporate veil of a nondebtor entity in which Debtors have no membership interest and, therefore, under no circumstances can the Trustee bring the Fraudulent Transfer Claims.[38]

        ii.    Plaintiff's Response

First, Plaintiff's Response refutes Defendants' view that this is "a fraudulent transfer case."[39] Plaintiff's Complaint requests the Court to determine that all of Solomon Global's assets, not just the assets transferred to Aaron, are assets of the Debtors.[40]

Second, Plaintiff argues that Solomon Global is nothing more than Debtors' alter ego, which, pursuant to the Court's under advisement order in *In re Star Mountain Resources, Inc.*,[41] "expands the debtor's assets to include the property of the alter ego."[42]

Third, Plaintiff argues that Solomon Global is merely a "sham and an artifice."[43] Plaintiff asserts that Debtors are the "true owners" of the assets titled in Solomon Global's name and have always exercised dominion and control over Solomon Global's assets. Plaintiff contends that, under Arizona law, actual "ownership" or "equitable ownership" may exist independent of record title.[44]

Finally, Plaintiff argues that the Court could substantively consolidate Solomon Global with the Debtors' Bankruptcy Estate based on the facts alleged.[45]

---

[37] DE 12, page 6 and DE 18.
[38] DE 12, page 6.
[39] DE 15, page 2.
[40] DE 15, page 2.
[41] *In re Star Mountain Resources, Inc. ("Star Mountain")*, 2020 WL 6821721, *5 (Bankr. D. Ariz. Sept. 30, 2020) ("Star Mountain Order").
[42] DE 15, page 3.
[43] DE 15, page 3.
[44] DE 15, page 3-4.
[45] DE 15, page 7.

## II. JURISDICTION

The Court has jurisdiction over this bankruptcy case and this Adversary Proceeding pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(A), (H), & (O).

## III. ISSUE

Whether Plaintiff's Complaint sets forth a cognizable claim under Arizona law where that Complaint seeks to recover the assets owned by or transferred by a nondebtor LLC, in which Debtors hold no membership interests in that LLC.

## IV. ANALYSIS

### A. Motion to Dismiss Standard

Bankruptcy Rule 7008 and 7012 apply Rule 8 and Rule 12 of the Federal Rules of Civil Procedure, respectively. Rule 8(a)(2) requires that a complaint contain a "short and plain statement of the claim, showing that the pleader is entitled to relief." [46] Although detailed factual allegations are not required, the facts in the complaint, when accepted as true, must "state a claim to relief that is plausible on its face." [47] A Rule 12(b)(6) dismissal may be based on either the lack of a cognizable legal theory or the absence of sufficient facts to support a cognizable legal theory.[48]

Here, Plaintiff's Complaint alludes to multiple legal theories, including alter ego, instrumentality, and "sham transactions." Legal theories and/or labels aside, Plaintiff, at bottom, requests the Court ignore Solomon Global's separate legal existence and find that the assets ostensibly owned by Solomon Global are assets of the Debtors and,

---

[46] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).
[47] *Id.* at 570.
[48] *Johnson v. Riverside Healthcare Sys., LP,* 534 F.3d 1116, 1121 (9th Cir. 2008).

7

therefore, property of this Bankruptcy Estate. In essence, Plaintiff requests the Court to pierce the corporate veil of Solomon Global.

At the June 6, 2022 hearing, both parties raised the Court's Star Mountain Order. The Court discussed on the record why it believed its Star Mountain Order and the cases cited therein were not applicable to the case at bar. First, the alleged alter ego in *Star Mountain* was the debtor's wholly owned subsidiary. Here, Debtors do not have any membership interest in the nondebtor entity Plaintiff seeks to pierce. Second, the Court applied Nevada law in the Star Mountain Order. Here, the Court must look to Arizona law because Solomon Global is an Arizona corporation and Debtors are domiciled in Arizona.[49] As pled, Plaintiff's Complaint does not state a cognizable legal theory under Arizona law because Debtors do not have an ownership interest in Solomon Global.

### B. The Trustee's Legal Theories
#### 1. Alter-Ego Theory

In determining whether an entity is the alter ego of an individual, bankruptcy courts must apply the law of the forum state.[50] While Arizona courts have not explicitly recognized the doctrine of reverse corporate veil piercing, federal bankruptcy courts applying Arizona law have applied the doctrine to reach the assets of a debtor's corporation where the corporation is the mere alter ego of the debtor.[51]

Under Arizona law, an alter ego claim is not a standalone cause of action but is a remedy raised in the context of another action, typically one based on contract or tort.[52] To prove the existence of an alter ego relationship, Plaintiff must show by a preponderance of the evidence that:

---

[49] *Butner v. United States.*, 440 U.S. 48, 54 (1979).
[50] *See S.E.C. v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003).
[51] *See In re Destiny Enter., LLC*, 2008 WL 5047808, at *3 (Bankr. D. Ariz. July 14, 2008) (describing a claim to recover from a corporate debtor's owner through reverse veil piercing).
[52] *Specialty Companies Grp., LLC v. Meritage Homes of Arizona, Inc.*, 492 P.3d 308, 310 (Ariz. 2021).

8

there is such unity of interest and *ownership* that the separate personalities of the corporation and the *owners* cease to exist . . . [and] to observe the corporation would work an injustice.[53]

Courts are split as to what constitutes "ownership" for the purposes of finding an alter ego relationship.[54] Many courts have held that "equitable ownership" in a corporation or LLC is sufficient to pierce the corporate veil.[55] Courts in this camp do not require a debtor to have a membership interest in the alleged alter ego but instead, "abandon such formalism in favor of an equitable approach focusing on the individual's domination of the corporation."[56] This Court is not aware of, and Plaintiff has not cited, any Arizona case or statute applying the doctrine of "equitable ownership" in the context of veil piercing.

While Arizona courts are silent on this issue, in *In re Don's Making Money*, Bankruptcy Judge Case, applying Arizona law, explained in dicta that "the doctrine of piercing the corporate veil applies *only* to plaintiffs who seek recovery against the personal assets of corporate shareholders and directors."[57] In *Don's Making Money*, the defendants Joseph and Sari Deihl ("Deihls") owned various business entities.[58] Regency, one of the Deihls' entities, entered into a purchase agreement with the debtors to purchase the debtors' informercial business.[59] Regency defaulted on its obligations to the debtors under the purchase agreement.[60] The Deihls subsequently formed UBS and assigned

---

[53]*Ize Nantan Bagowa, Ltd. v. Scalia*, 577 P.2d 725, 730 (Ariz. Ct. App. 1978) (emphasis added).
[54] *See Buckley v. Abuzir*, 2014 Il App (1st) 130469, ¶ 17 (discussing different courts' views on whether the corporate veil may be pierced to reach nonshareholders or nonmembers).
[55] *See Freeman v. Complex Computing Co.*, 119 F.3d 1044, 1051 (2d Cir. 1997) (noting New York courts uniformly require only equitable rather than actual ownership to pierce the corporate veil); *see also McCallum Family LLC, v. Winger*, 221 P.3d 69, 75 (Colo. App. 2009) (allowing corporate veil piercing to reach a nonshareholder); *Angelo Tomasso, Inv. v. Armor Constr. & Paving, Inc.*, 447 A.2d 406, 412 (Conn. 1982) (finding veil piercing did not hinge on defendant's status as a shareholder; *Mallard Auto. Grp., Ltd. v. LeClair Mgmt. Corp.*, 153 F. Supp. 2d 1211, 1215 (D. Nev. 2001) (finding that lack of stock ownership is not determinative under Nevada law).
[56] *Buckley*, 2014 Il App (1st) 130469, ¶ 17.
[57] *In re Don's Making Money LLP*, 2007 WL 2784351, at *3 (Bankr. D. Ariz. Sept. 24, 2007) (emphasis added).
[58] *Id.* at *1.
[59] *Id.*
[60] *Id.*

9

Case 2:22-ap-00048-DPC    Doc 19    Filed 08/31/22    Entered 08/31/22 14:12:39    Desc
Main Document    Page 9 of 15

Regency's rights and obligations under the purchase agreement thereto.[61] The chapter 7 trustee eventually obtained a judgment against UBS and brought a lawsuit to collect the judgment, naming UBS, the Deihls, and the various other corporate entities they owned as defendants.[62] The defendants argued that the trustee could not pierce the corporate veil of UBS to reach the Deihls' various other entities, which did not have an ownership interest in UBS.[63] Judge Case agreed but found that a closer reading of the trustee's complaint only sought to pierce UBS's corporate veil to reach the Deihls, who had an ownership interest in UBS.[64]

Here, Plaintiff's alter ego theory fails because Debtors do not have a membership interest in Solomon Global. The Court does not find persuasive Plaintiff's reliance on Arizona cases recognizing "equitable ownership" over bare legal title in other situations. The numerous cases cited in Plaintiff's Response do not involve veil piercing nor the corporate context.[65] For example, In *Matter of One Residence*[66] and *One 1983 Toyota*,[67] the Arizona Court Appeals considered who the "owner" of a vehicle was under Arizona's forfeiture statute, which defines "owner" to mean a person "who has an interest in property, whether legal or *equitable*."[68] There is no Arizona statute defining "ownership" of an LLC to include an equitable interest.

While this Court believes that holding a membership interest in the LLC should not be a prerequisite to veil piercing, this Court will not establish new Arizona law where

---

[61] *Id.*
[62] *Id.* at *2-3.
[63] *Don's Making Money, LLP*, 2007 WL 2784351 at *2.
[64] *Id.*
[65] *E.g., O'Hair v. O'Hair*, 508 P.2d 66, 71 (Ariz. 1973) (finding wife's withdrawal of $75,000 from the marital account to create a revokable trust with herself as a beneficiary was a wrongful appropriation); *Kingsbury v. Christy*, 192 P. 1114, 1115 (Ariz. 1920) (finding a resulting trust was created when defendant son transferred title to property to his defendant mother-in-law and, therefore, the transfer of the property back to the son was not a fraudulent transfer because he was the rightful owner of the property).
[66] *Matter of One Residence Located at 4030 W. Avocado, Cortaro Ridge, Lot 32*, 908 P.2d 33, 34 (Ariz. Ct. App. 1995).
[67] *In re One 1983 Toyota Silver Four-Door Sedan, Vin. No. JT2MX63E4D0004378 ("One 1983 Toyota")*, 814 P.2d 356, 358 (Ariz. Ct. App. 1991).
[68] A.R.S. § 13-4301(6) (2021) (emphasis added).

10

Arizona courts have not previously seen fit to do so.[69] As pled, Plaintiff's alter ego theory is not a cognizable legal theory under Arizona law.

### 2. Instrumentality Theory

While Plaintiff's Complaint does not explicitly plead "instrumentality," Plaintiff alludes to this theory of liability through his assertion that Debtors "always exercised dominion and control over Solomon Global and its assets."[70]

Arizona courts recognize the instrumentality theory as very similar but distinct from the alter ego theory.[71] Like alter ego, instrumentality theory is a "form of derivative liability arising from [an] underlying substantive cause of action" and not a standalone claim but a remedy.[72] Under Arizona's instrumentality theory, courts may disregard a corporation's separate legal existence in the interests of justice when "one corporation so dominates and controls another as to make that other a simple instrumentality or adjunct to it."[73]

While Arizona courts employ both the alter ego theory and instrumentality theory to pierce the corporate veil, Arizona courts have only applied the instrumentality theory where a plaintiff seeks to use a subsidiary corporation to pierce through to a parent corporation's assets.[74] No Arizona reported decision applies the instrumentality theory to

---

[69] The very point of Arizona's alter ego doctrine is "prevent 'fraud,' 'misuse,' and 'injustice.'" *Butler Law Firm, PLC v. Higgins*, 410 P.3d 1223, 1229 (Ariz. 2018). If an individual shelters himself from liability by directing and controlling a business organization as an extension of himself without holding an actual ownership interest in the alleged business or alter ego, the law should make equitable relief available to avoid such injustice. Requiring actual ownership to pierce the corporate veil elevates form over substance. *See McCallum Family, LLC v. Winger*, 221 P.3d at 75.

[70] DE 1, page 3. Curiously, Plaintiff does not seek an award on a conversion claim, and the Court will not analyze or rule on the validity of such claim. In the words of Judge McNamee and the Seventh Circuit, "[j]udges are not like pigs, hunting for truffles buried in briefs." *See Charles Michael Colburn v. David M. Reaves, et al.,* 2022 WL 3754721, *3 (D. Ariz. Aug. 30, 2022) (citing *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)).

[71] *Gatecliff v. Great Republic Life Ins. Co.*, 821 P.2d 725, 729 (Ariz. 1991).

[72] *See Airbus DS Optronic GmbH v. Nivisys, LLC*, 183 F. Supp. 3d 986, 994 (D. Ariz. 2016) (citing *Lindquist v. Farmers Inc.*, 2008 WL 343299, at *10 (D. Ariz. Feb. 6, 2008)).

[73] *Walker v. Southwest Mines Development Co.*, 81 P.2d 90, 95 (Ariz. 1938).

[74] *See id.* at 415 (piercing the corporate veil "where stock ownership is resorted to . . . for the purpose of controlling the subsidiary company"); *Gatecliff*, 821 P.2d at 729 (discussing the instrumentality theory in the context of a parent/subsidiary relationship); *Savage v. Royal Props., Inc.*, 417 P.2d 925, 927 (Ariz. Ct. App. 1966) (finding the subsidiary corporation "was not so organized and controlled, and its affairs so conducted" that it was a "mere instrumentality" of the parent corporation).

reach an entity's assets where that entity itself is not owned by another entity, much less by a non-entity (individual).

This Court will not create new law by expanding Arizona's instrumentality theory beyond its current bounds. Plaintiff cannot save his Complaint through an instrumentality theory under Arizona law.

### 3. Sham Entity Theory

Plaintiff's Complaint asserts that Solomon Global is nothing more than a "sham and an artifice." Arizona courts have referenced "sham entity" as a factor or element in determining whether to pierce the corporate veil.[75] In *Ashford v. Accuwright Industries, Inc.*, the Arizona Court of Appeals held that the plaintiff did not show "by a preponderance of the evidence that the financial setup of the corporation [was] only a *sham*…" to justify veil piercing.[76] Arizona also recognizes that a corporation's operations may be a sham even if the corporation was not originally set up or organized as a sham.[77] In *Chapman v. Field*, the Arizona Supreme Court held that the plaintiff's evidence did not show that the corporation was incorporated or *operated* as a *mere sham* to justify piercing the corporate veil.[78]

This Court is not aware, and Plaintiff does not cite, any Arizona case recognizing Plaintiff's "sham entity" theory as a standalone cause of action that would allow this Court to ignore Solomon Global's separate legal existence and find that the assets of Solomon Global are, in fact, Debtor's assets (and, therefore, assets of the Bankruptcy Estate). All of the Arizona cases and bankruptcy cases discussing "sham transactions" upon which Plaintiff relies in his Response involved assets or the transfer of assets in

---

[75] *See Ize Nantan Bagowa*, 577 P.2d at 729; *see also IDA Moorhead Corporation v. Leach*, 2016 WL 6647736, *4 (Ariz. Ct. App. Nov. 10, 2016); *Norris Chemical Co v. Ingram*, 679 P.2d 567, 569 (Ariz. Ct. App. 1984).
[76] *Ashford v. Accuwright Industries, Inc.* 2020 WL 950217, *4 (Ariz. Ct. App. Feb. 27, 2020) (emphasis added).
[77] *Employer's Liability Assur. Corp. v. Lunt*, 313 P.2d 393, 396 (Ariz. 1957) (holding that "[t]he disregard of the corporate fiction has not been milited to instances where the incorporation is for fraudulent purposes, but may be observed if after organization the corporation is employed for fraudulent purposes").
[78] *Chapman v. Field*, 602 P.2d 481, 484 (Ariz. 1979) (emphasis added).

12

which the individual or debtor held a direct ownership interest.[79] Here, Debtors did not personally transfer any assets, nor have Debtors held any ownership interest in Solomon Global since 2014 or its assets since 2011.

This Court finds no distinction between Plaintiff's "sham entity" theory and his alter ego theory. Whether Solomon Global is the Debtors' "alter ego" or is a "sham corporation" requires this Court to pierce the corporate veil of an entity in which Debtors hold no membership interest. As pled, Plaintiff's "sham entity" theory is not a cognizable legal theory for the same reason his "alter ego" theory fails under Arizona law. Plaintiff cannot use his "sham entity" theory to leapfrog over the requirement of ownership of the LLC's membership interests.

### 4. Substantive Consolidation

Substantive Consolidation "enable[es] a bankruptcy court to disregard separate corporate entities, to pierce the corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation."[80] "While substantive consolidation includes a veil piercing element, it is more than that."[81] In the Ninth Circuit, a party requesting substantive consolidation must show that creditors dealt with two entities as a "single economic unit and did not rely on their separate identity in extending credit," or "the affairs of the debtor are so entangled that consolidation will benefit all creditors."[82] In *In re Bonham*, the chapter 7 trustee sought to consolidate the debtor's estate with two nondebtor corporations wholly owned by the debtor.[83] The bankruptcy

---

[79] *E.g., Wiscombe v. Wiscombe*, 2017 WL 2544837, *3 (Ariz. Ct. App. 2007) (finding a husband's transfer of his marital assets and business on the precipice of divorce was a sham because the husband continued to receive the benefits from the transferred business); *Smith v. Henley,* 548 B.R. 724, 728 (S.D. Miss. 2016) (finding that debtor's property surrendered to her nondebtor husband to decrease her debt limits under § 109(e) was a sham).
[80] *In re Bonham*, 229 F.3d 750, 764 (9th Cir. 2000); *In re Casale*, 62 B.R. 889, 896 (Bankr. E.D.N.Y. 1986) (finding the deed debtor conveyed to his attorney of his home was a sham and a fraud and the home was estate property).
[81] *In re Wheeler*, 444 B.R. 598, 609 (Bankr. D. Idaho 2011). The parties are directed to the look at the Court's order in *Star Mountain Resources, Inc.*, 2022 WL 2294175, *7-8 (Bankr. D. Ariz. Jun. 22, 2022) for why the Court views substantive consolidation and alter ego as two distinct legal theories.
[82] *Bonham*, 229 B.R. at 765.
[83] *Id.* at 758.

13

court granted the chapter 7 trustee's substantive consolidation request but noted that "consolidating a non-debtor's estate with the case of an existing debtor is a much more sensitive matter than consolidating existing debtors."[84]

As pled, Plaintiff's Complaint does not request substantive consolidation. Plaintiff argued in his Response to Defendants' Motion to Dismiss that the Court could order the consolidation of Solomon Global and Debtors based on the facts asserted in the Complaint.[85] The Court is not aware of any case where a court substantively consolidated an individual debtor with a nondebtor entity where the debtor did not have an ownership interest in that entity.[86] Doing so, in this Court's view, would seem to be an even more "sensitive matter" than consolidating a debtor with its wholly owned entities, as described by the Ninth Circuit in *Bonham*. The parties did not brief this issue but this Court questions whether "substantive consolidation" is a cognizable legal theory through which Plaintiff could save his Complaint.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Complaint is hereby dismissed. As pled, Plaintiff's Complaint does not assert a cognizable legal theory that would allow this Court to disregard the separate legal existence of a nondebtor entity in which Debtors hold no ownership interest. This Court will not blaze new trails which Arizona courts have not yet seen fit to explore. This Court leaves the expansion and creation of Arizona law to Arizona courts and Arizona's legislature. However, this Court grants Plaintiff leave to amend his Complaint within 30 days from entry of the Court.

---

[84] *In re Bonham*, 226 B.R. 56, 83 (Bankr. Alaska 1998).
[85] DE 15, page 7.
[86] *See Sampsell v. Imperial Paper & Color Corp.*, 313 U.S. 215 (1941) (consolidating the estate of an individual debtor with a nondebtor entity wholly owned by the debtor); *see also In re Creditors Service Corp.*, 195 B.R 680, 690 (Bankr. S.D. Ohio 1996) (ordering substantive consolidation of an individual and all of the entities she owned, including the debtor); *In re Crabtree*, 39 B.R. 718 (Bankr. E.D. Tenn. 1984) (consolidating the debtor's case with a nondebtor entity in which debtor was the sole shareholder).

14

1

2     **IT IS ORDERED**

3     **DATED AND SIGNED ABOVE.**

4

5

**To be Noticed through the BNC to:**

6 Interested Parties

15